

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| KRYSTAL TANT,<br>*Plaintiff,*<br><br>v.<br><br>CAROLYN COLVIN,<br>ACTING COMMISIONER<br>OF SOCIAL SECURITY<br>*Defendant.* | §<br>§<br>§<br>§  Case No. 6:12-CV-00134-WSS-JCM<br>§<br>§<br>§<br>§<br>§ |

### REPORT AND RECOMMENDATION OF
### THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE WALTER S. SMITH, JR.,
UNITED STATES DISTRICT JUDGE

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C) and Rules 1(h) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

### I. BACKGROUND AND STATEMENT OF THE CASE

Krystal Tant, hereinafter "Plaintiff," seeks judicial review of a final decision of the Acting Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act ("the Act"). (Tr. at 12.) Plaintiff alleged disability due to epilepsy beginning on May 1, 2004. (Tr. at 12.) Plaintiff's claims were initially denied on May 19, 2009, and upon reconsideration on October 7, 2009. (Tr. at 12.) Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which ALJ Gary J. Suttles held on November 3, 2010. (Tr. at 12.) Plaintiff, Plaintiff's grandmother, and vocational expert (VE) Byron Pettingill testified at the hearing. (Tr. at 28.) Plaintiff was informed of her right to representation and chose to appear without assistance of an attorney. (Tr. at 30, 92.)

The ALJ issued a decision on December 9, 2010 finding that Plaintiff was "not disabled." (Tr. at 21-22.) In the decision, the ALJ applied the 5-step process as set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 20, 2009, the application date. (Tr. at 14.) At step two, the ALJ found that Plaintiff had the following severe impairments: epilepsy and depression. (Tr. at 14.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. at 14.) At step four, the ALJ determined the residual functional capacity (RFC) of Plaintiff. (Tr. at 16.) The ALJ found that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. 416.967(b)[1], as well as stand and/or walk for six hours out of an eight-hour workday or sit for six hours of an eight-hour workday. (Tr. at 16.) The ALJ found that Plaintiff could not climb ladders, ropes, or scaffolds and should be limited from exposure to heights, dangerous machinery, uneven surfaces, and excessive heat and humidity. (Tr. at 16.) The ALJ further found that Plaintiff could understand simple instructions, concentrate and perform simple tasks, respond and adapt to workplace changes and supervision but in a limited public/employee contact setting. (Tr. at 16.)

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. at 21.) The ALJ relied on testimony from the VE to determine whether jobs exist for a person of Plaintiff's abilities and limitations. (Tr. at 21.) The

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 416.967(b) (2013).

2

VE testified that given Plaintiff's abilities and limitations, an individual would be able to perform the requirements of representative occupations such as office helper, clothing sorter, and small products assembler. (Tr. at 21.) Based on this testimony, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. at 21-22.) Therefore, the ALJ found the Plaintiff was "not disabled" as defined in the Act and under 20 C.F.R. § 416.920(g) and denied Plaintiff's application. (Tr. at 22.)

Plaintiff timely filed a request for review, but the Appeals Council denied Plaintiff's request on March 27, 2012. (Tr. at 4.) Plaintiff commenced the present action seeking judicial review of the ALJ's decision under 42 U.S.C. § 405(g). On May 21, 2013 this Court ordered the parties to submit briefs. (ECF No. 14.)

## II. JUDICIAL REVIEW

Judicial review of the denial of disability benefits pursuant to 42 U.S.C. § 405(g) is limited to determining the existence of substantial evidence in the record to support the Commissioner's decision, and whether the ALJ followed relevant legal standards in evaluating the evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

Substantial evidence is more than a scintilla, but less than a preponderance. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). It requires evidence that is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 400 (1971); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence will create more than a mere suspicion of the existence of the fact to be established. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

In determining whether substantial evidence of disability exists, a court will weigh: (1) objective medical facts or clinical findings, (2) diagnoses and opinions of treating and examining physicians, (3) plaintiff's subjective evidence of pain and disability, and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d. 123, 126 (5th Cir. 1991). If proper principles of law were applied, and if the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed, even if substantial evidence exists that would support an alternative finding. *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992); *Martinez*, 64 F.3d. at 173 (citing *Richardson*, 402 U.S. at 390); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

The scope of review is limited to the record, and the court will neither conduct de novo review nor re-weigh the evidence. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

### III. LEGAL STANDARD

The legal standard for determining disability under the Act is whether a claimant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last continuously for at least twelve months. 42 U.S.C.A. § 423 (d)(1)(A). The claimant's impairments must be of such severity that the claimant is unable to perform previous work and cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C.A. § 423 (d)(2)(A). In determining whether an individual applicant is capable of performing "substantial gainful activity," a five-step sequential evaluation process is utilized. 20 C.F.R. § 404.1520(a)(1). If the Commissioner can determine that the claimant is disabled or not disabled at any step, a decision is made and the remaining steps are not considered. 20 C.F.R. § 404.1520(a)(4). Otherwise, the

4

Commissioner proceeds to the next step. 20 C.F.R. § 404.1520(a)(4). The steps are summarized as follows:

> Step 1: If the claimant is engaged in substantial gainful activity, claimant is not disabled.
>
> Step 2: If the claimant does not have a medically determinable impairment or combination of impairments that is "severe," claimant is not disabled.
>
> Step 3: If claimant's severe impairment(s) meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 and meets the duration requirement, claimant is presumed disabled without further inquiry.
>
> Step 4: The Commissioner assesses the claimant's residual functional capacity. If claimant can still perform past relevant work in light of claimant's residual functional capacity, claimant is not disabled. "Residual functional capacity" is defined as what a claimant can still do despite his or her limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1545(1).
>
> Step 5: If the claimant is able to perform other work in light of claimant's residual functional capacity, age, education, and work experience, claimant is not disabled.

*See* 20 C.F.R. § 404.1520(a)-(f); 20 C.F.R § 416.920. The burden of proof is on the claimant for the first four steps, in which the claimant must prove that he has a disability by establishing a medically determinable physical or mental impairment that prevents any substantial gainful activity. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). If the claimant meets the burden of proof, the Commissioner must then show the existence of jobs for the claimant by pointing to testimony at the hearing that a number of jobs suited to Plaintiff's capabilities were available in claimant's geographical locale. *Morris v. Bowen*, 864 F.2d 333, 335-36 (5th Cir. 1988) (per curiam). If the Commissioner fulfills his burden of pointing out potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternate work. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

## IV. ISSUE PRESENTED

In her brief, Plaintiff sets forth the following issue for the Courts review:

> Were the ALJ's credibility findings supported by substantial evidence, and, if not, do those unsupported findings require remand? (Pl.'s Br. at 1.)

## V. DISUCSSION

The ALJ found at step five of the sequential evaluation process that Plaintiff was not disabled because, given her RFC, she possessed the ability to perform work existing in significant numbers in the national economy. (Tr. at 21-22.) In determining Plaintiff's RFC, the ALJ considered the credibility of Plaintiff and found that Plaintiff's allegations of limitations were "not credible to the extent that her capacity is so limited that she is unable to engage in substantial gainful activity." (Tr. at 17, 20.) Plaintiff contends that the ALJ's credibility finding was inadequate and unsupported by substantial evidence and that the unsupported credibility finding prejudiced Plaintiff's claim. (Pl. Br. at 8.) "[A] factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988)). Therefore, the Court will affirm the ALJ's credibility finding if it is supported by substantial evidence.

### 1. Plaintiff's Condition and Evidence in Support of her Allegations

Plaintiff's impairments include juvenile myoclonic epilepsy and depression. (Tr. at 14.) Plaintiff stated in her Adult Function Report that her condition interfered with her ability to stand, walk, talk, hear, climb stairs and use her hands. (Tr. at 115.) Additionally, she indicated that her memory, ability to complete tasks, concentration, ability to understand, and ability to follow instructions were also affected. (Tr. at 115.) Plaintiff asserts her academic record supports her symptoms. (Pl.'s Br. at 10-11.) Specifically, schooling became more difficult, she required a

tutor, and could not do schoolwork in the morning until uncontrolled shaking due to her episodes subsided. (Pl.'s Br. at 4, 10-11, citing Tr. at 373, 383.)

Plaintiff also points to certain medical evidence as support for her symptoms. Dr. Brian Ryals at Cook Children's Health Care (Children's) performed an EEG and concluded that it was consistent with features of a tendency toward seizures of focal as well as primarily generalized onset. (Pl.'s Br. at 11, citing Tr. at 147.) Multiple other doctors at Children's treated Plaintiff and assessed Plaintiff's seizures. (Pl.'s Br. at 11, citing Tr. at 150, 153, 171, 253.) In addition to the doctors at Children's, Plaintiff finds other medical evidence that she says supports her symptoms. Dr. Mark Race examined Plaintiff and concluded that she suffered an unusual seizure disorder, with occasional spells of syncope happening about once a year. (Pl.'s Br. at 5, citing Tr. at 319.) Dr. Dixie Woolston concluded that Plaintiff's intellectual functioning was in the low average range, that Plaintiff had moderately to severely impaired sustained attention and moderately impaired processing speed and problem solving abilities. (Pl.'s Br. at 11, citing Tr. at 374-75.) Finally, Dr. J. Alan Bates from Parkland Hospital issued a medical statement in which he affirmed Plaintiff's diagnosis of juvenile myoclonic epilepsy and concluded that the ailment was likely to be a chronic long term disability. (Pl.'s Br. at 12, citing Tr. at 371.) Dr. Bates further concluded that Plaintiff's condition prevented her from returning to work permanently. (Pl.'s Br. at 12, citing Tr. at 371.)

## 2. Evidence Relied on by the ALJ

After reviewing all of the evidence, the ALJ found that Plaintiff's daily activities and the medical evidence did not support the degree of symptoms alleged by Plaintiff. (Tr. at 20.) Plaintiff alleged that her impairments interfered with her ability, among other things, to stand,

walk, talk and hear as well as her ability to complete tasks and her ability to understand. (Tr. at 115.)

Despite these allegations, the ALJ noted that Plaintiff continued to engage in her hobbies of reading and writing for therapy, was able to prepare some meals on her own, and retained the ability to do laundry as well as load and unload the dishwasher. (Tr. at 17.) Additionally, according to testimony given by Plaintiff at the hearing, her daily activities included reading, using the internet for Facebook and YouTube, playing games on the computer, and going to town with her grandmother. (Tr. at 41-44). The ALJ cited this as evidence that Plaintiff was able to function to a far greater degree than alleged. (Tr. at 17.)

Further, the ALJ also considered the medical evidence on record and found that the evidence did not indicate disabling symptoms. (Tr. at 19.) The ALJ ultimately concluded that Plaintiff's impairments have been adequately treated and have not resulted in any serious complications or deterioration. (Tr. at 20.) Although Plaintiff alleges that her condition is permanent and cites the opinion of Dr. Bates as support (Pl.'s Br. at 12), the Court finds the evidence relied on by the ALJ persuasive.

The ALJ found the lack of major seizures as evidence of a controlled condition. (Tr. at 20.) The ALJ first noted the report of Dr. Race, which indicates that Plaintiff reported small seizures but had only three major seizures in the last few years. (Tr. at 319.) Next, the ALJ reviewed a hospital record from March 2009. (Tr. at 19.) In that report, the doctor indicated no major symptoms of seizures, such as bowel or bladder incontinence, loss of consciousness, or a bit tongue. (Tr. at 299.) The ALJ also relied on the opinion of Dr. Kelvin Samartunga, who found that Plaintiff had no exertional limitations such as Plaintiff alleged, but did recommend limiting some of Plaintiff's activities due to seizure precautions. (Tr. 332-39.) Based on this evidence, the

ALJ concluded that Plaintiff does not have classic generalized seizures and does not have classic absent seizures. (Tr. at 19.) Further, the ALJ found that Plaintiff lacks frequency of seizure activity and that her medication level was barely therapeutic. (Tr. at 19.)

### 3. ALJ's Credibility Finding and Holding

Considering the above evidence, more than a scintilla of evidence exists in the record to support the ALJ's decision. Plaintiff claims in her brief that her daily activities, aided by her grandmother, are entirely consistent with her allegations of disabling seizures and depression. (Pl. Br. at 9.) Plaintiff states that her attempt to retain some normalcy in life by doing these daily activities are not inconsistent with seizures or symptoms of headaches, pain, anxiety, depression, lack of concentration, slowed speech and understanding, slow performance, and other impairments and do not necessarily establish an ability to work on a regular and continuing basis. (Pl. Br. at 10.)

"It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status." *Leggett*, 67 F.3d at 565 n.12. Inconsistencies between testimony about limitations and Plaintiff's daily activities are relevant in evaluating credibility. *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990). In this case, the ALJ considered Plaintiff's daily activities and found inconsistencies between Plaintiff's testimony and the other evidence of record. (Tr. at 20.) These inconsistencies led to the ALJ's credibility finding of "not credible to the extent that her capacity is so limited she is unable to engage in substantial gainful activity consistent with the above residual functional capacity." (Tr. at 20.)

Although the Court recognizes that evidence has been presented on both sides, the ALJ's decision must be affirmed if substantial evidence supports it. In this case, a reasonable mind could accept that Plaintiff was not impaired to the extent that she alleged and therefore

substantial evidence can be found in the record to warrant the ALJ's credibility finding. Without re-weighing the evidence or substituting its own judgment, and in consideration of the deference afforded to the ALJ, this Court concludes that there was sufficient evidence to support the ALJ's credibility finding, and subsequently the ALJ's final decision that Plaintiff was not disabled.

## VI. RECOMMENDATION

Based on the foregoing discussion, the Court recommends that the final decision of the Commissioner be **AFFIRMED**. The parties may wish to file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). To the extent that a party has not been electronically served by the Clerk with this Report and Recommendation pursuant to the CM/ECF procedures of this District, the Clerk is directed to send such party a copy of this Report and Recommendation by a national overnight delivery service having confirmation of pickup and delivery.

**SIGNED** this 27th day of January, 2015.

JEFFREY C. MANSKE
U.S. MAGISTRATE JUDGE